UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DAMON SINCLAIR,

       Petitioner,

  -against-

UNITED STATES OF AMERICA,

       Respondent.
------------------------------------------------------ x

ORDER

12-CV-3344 (CS)
10-CR-392 (CS)

Seibel, J.

      Petitioner Damon Sinclair has filed a petition under 28 U.S.C. § 2255 alleging that he received ineffective assistance of counsel in connection with his plea agreement, (No. 12-CV-3344, Doc. 1 ("Pet."), at 6), in that his lawyer misled him into thinking that: a) he could plead pursuant to a plea agreement containing a stipulation as to drug weight but still challenge drug weight in some sort of post-sentencing proceeding; and b) if he did not accept a plea to a charge of participating in a conspiracy to distribute at least 280 grams of cocaine base, commonly known as "crack," the Government would file a prior felony information under 21 U.S.C. § 851 that would double his mandatory minimum sentence upon conviction, (No. 12-CV-3344, Doc. 2 ("P's Br."), at 6-8). Familiarity with the petition, prior proceedings in the case, and the general legal standards governing Section 2255 petitions and ineffective assistance of counsel claims is presumed.

I.    Waiver

      Petitioner in his plea agreement agreed not to "file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 . . . of any sentence within or below the Stipulated Guidelines Range of 120 to 135 months'

imprisonment." (No. 12-CV-3344, Doc. 13 ("Gov't Br.") Ex. B, at 4-5.) He specifically stated at the plea proceeding that he understood that he was giving up his right to appeal or otherwise attack the sentence as long as it was within or below that range, (*id.* Ex. C, at 15), and that he had signed the plea agreement freely and voluntarily, (*id.*; *see id*. at 18), demonstrating the knowing and voluntary nature of the waiver, *see United States v. Monzon*, 359 F.3d 110, 117-18 (2d Cir. 2004); *United States v. Ready*, 82 F.3d 551, 557 (2d Cir. 1996). Because Petitioner was sentenced to 120 months' imprisonment, (No. 10-CR-392, Doc. 389), the waiver is enforceable in a Section 2255 proceeding, *see Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001), except in limited circumstances.

The limited circumstances permitting a challenge to a sentence in the face of a knowing and voluntary waiver include where the record reveals a meritorious "claim that the waiver was the result of ineffective assistance of counsel." *Monzon*, 359 F.3d at 118-19; *see United States v. Oladimeji*, 463 F.3d 152, 155 (2d Cir. 2006) (enforcing waiver provisionally on direct appeal, but contemplating subsequent Section 2255 petition "upon which the court could determine whether ineffective assistance of counsel nullified the defendant's waiver of his right to challenge his conviction"); *see also Yushuvayev v. United States*, 532 F. Supp. 2d 455, 470-71 (E.D.N.Y. 2008) (interpreting *Oladimeji* to permit collateral attacks despite waiver where claim is of ineffective assistance in connection with counsel's recommendation that petitioner accept plea agreement containing waiver).

Here Petitioner makes no argument that he did not understand his waiver or that it otherwise resulted from ineffective assistance; his claim is that his lawyer was ineffective for misleading him about his exposure to a prior felony information and his ability to later challenge drug weight, not for failing to explain his waiver of his right to attack a sentence within or below

2

the stipulated range. Thus, Petitioner not having alleged any ineffective-assistance-based defect in connection with the waiver (or, indeed, any defect), the waiver is enforceable. *See Oladimeji*, 463 F.3d at 155 ("Ineffective assistance *with respect to an appeal waiver*, if proven, would cast doubt on enforceability of the appeal-waiver provision.") (emphasis added); *Monzon*, 359 F.3d at 118-19 (waiver not enforceable where "*waiver was the result of ineffective assistance*") (emphasis added); *Yushuvayev*, 532 F. Supp. 2d at 469 (noting Second Circuit's "unease" at enforcement of waiver where defendant "argues that *his execution of that waiver was itself* the product of ineffective assistance of counsel") (emphasis added). *But see id*. at 470 (under *Oladimeji*, petitioner may pursue by collateral challenge a claim that "counsel's *recommendation that he accept the plea agreement containing the waiver was itself* ineffective assistance") (emphasis added).

Some courts, however, construe *Monzon* and *Oladimeji* broadly to permit collateral challenges in the face of a waiver where the petitioner alleged ineffective assistance in connection with any aspect of the plea process, not just that relating to the waiver, *see Cross v. Perez*, 823 F. Supp. 2d 142, 150-52 (E.D.N.Y. 2011), so I will address the merits, in an abundance of caution.

II.     Ineffective Assistance of Counsel

A criminal defendant is entitled to effective assistance of counsel in the plea-bargaining process. *See, e.g., Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998). To establish ineffective assistance of counsel, a petitioner must affirmatively show that: "1) counsel's performance fell below an objective standard of reasonableness according to prevailing professional norms, and 2) it is reasonably likely that prejudice occurred – i.e., that but for counsel's unprofessional errors, the result of the proceeding

3

would have been different." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)). Ineffective assistance during plea negotiations can invalidate a guilty plea to the extent it undermines the voluntary and intelligent nature of the decision to plead guilty. *Id*. Petitioner bears the burden of establishing both constitutionally deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

    A.    <u>Drug Weight</u>

Petitioner first claims that his lawyer, Francisco Celedonio, rendered ineffective assistance of counsel in connection with Petitioner's guilty plea, in that there was no record support for holding him responsible for at least 280 grams of crack, and that when he raised this issue, Mr. Celedonio said (and Petitioner believed) that Petitioner could plead guilty pursuant to a plea agreement that contained a stipulation to 280 grams of crack, but still challenge the drug weight later on in a *Fatico*-like proceeding[1] after sentencing. Had such advice been given, it would constitute substandard performance under the *Strickland* test, because obviously a defendant may not, without serious repercussions, stipulate to a fact and then contest it later at a hearing, let alone a hearing after sentence is imposed. But the record is quite clear, notwithstanding Petitioner's after-the-fact claim, that no such advice was given. Further, Petitioner has not met his burden of establishing prejudice.

    1.    <u>Substandard Performance</u>

The record makes clear that Petitioner did not receive, or act pursuant to, the advice to

---

[1] A *Fatico* hearing is an evidentiary proceeding to resolve disputed sentencing facts. *See, e.g., United States v. Cuevas*, 496 F.3d 256, 260 (2d Cir. 2007) (citing *United States v. Fatico*, 579 F.3d 707 (2d Cir. 1978)); *United States v. Allen*, 644 F. Supp. 2d 422, 428 & n.25 (S.D.N.Y. 2009) (same).

which he now points.  First, Petitioner's claim is contradicted by his own statements.  At the plea proceeding, Petitioner first stated that he wanted to waive indictment and plead guilty to a felony Information numbered S6 10 Cr. 92, which he had read and fully discussed with Mr. Celedonio. (Gov't Br. Ex. C, at 3-4.)  He expressed his satisfaction with Mr. Celedonio's services and acknowledged having had a full opportunity to discuss his case, the consequences of pleading guilty, and the decision to waive indictment.  (*Id.* at 3-5.)  He knowingly and voluntarily waived indictment and agreed to be prosecuted via a felony Information charging him with participating in a conspiracy to distribute at least 280 grams of crack.  (*Id.* at 4-6.)[2]  He acknowledged that he understood that the Court would be sentencing him to at least ten years' imprisonment.  (*Id*. at 10.)  He stated that he had read the plea agreement – which contained a stipulation that his offense involved at least 280 grams of crack, (*id*. Ex. B, at 2) – discussed everything in it with Mr. Celedonio, and fully understood it, (*id*. Ex. C, at 14).  He acknowledged that the written plea agreement was the complete understanding between him, his attorney and the Government, (*id*. at 14-15), and that he understood that the stipulation in the plea agreement regarding the Sentencing Guidelines was binding on him, (*id*. at 15-16).  Finally, when the prosecutor described how Petitioner conspired with others "to distribute drugs including 280 grams and more of crack," (*id*. at 17), Petitioner acknowledged the accuracy of the prosecutor's statement, (*id*.), and also specifically allocuted that he conspired with others to sell drugs, and that he was "aware that the group as a whole was responsible for at least 280 grams of crack," (*id*. at 17-18).

     In these circumstances, it stretches credulity beyond the breaking point to now accept

---

[2] Petitioner had originally been charged with participating in a conspiracy to distribute, among other things, at least 50 grams of crack.  (No. 10-CR-392, Doc. 92 ¶ 56.)  *See* note 3 below.

Petitioner's after-the-fact claim that he did not understand that he was agreeing to be held responsible for 280 grams of crack.  To the contrary, "[a] federal habeas court is entitled to rely on statements made during an allocution even in the face of a later, contrary claim." *Papetti v. United States*, No. 09-CV-3626, 2010 WL 3516245, at *8 (E.D.N.Y. Aug. 31, 2010) (internal quotation marks omitted); *see, e.g., United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (in rejecting ineffective assistance claim, district court entitled to rely upon defendant's sworn statements in open court that contradicted claim); *Ochoa-Suarez v. United States,* No. 07-CV-9275, 2008 WL 2220637, at *4 (S.D.N.Y. May 27, 2008) ("summarily reject[ing]" petititioner's claim that counsel led her to believe she could receive sentence below ten years, where transcript of plea included her acknowledgment of mandatory minimum and statement that no other promises had been made); *Salerno v. Berbary*, 389 F. Supp. 2d 480, 484-85 (W.D.N.Y. 2005) (rejecting challenge to validity of plea where petitioner's allegations in habeas proceeding were contradicted by his sworn statements at plea; "[a] trial court may fairly rely upon a [petitioner's] sworn statements made in open court"); *France v. Strack*, No. 99-CV-2510, 2001 WL 135744, at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief.").

Indeed, Petitioner's newly expressed claim that he thought he could challenge drug weight after sentencing cannot be reconciled with his concession that Mr. Celedonio told him that under the plea agreement the Government was offering him, he would not be able to contest drug weight.  (*See* P's Br. 6 ("Counsel informed petitioner that . . . unless I go to trial I cannot contest anything . . . .").)  Further, Mr. Celedonio by affidavit contradicts Petitioner's account: he specifically denies having advised Petitioner that he could challenge drug weight after

6

sentencing, (Gov't Br. Ex. F ¶¶ 4, 10), and he specifically states that he

> clearly advised [Petitioner] that in the context of a plea pursuant to a plea agreement (where the parties would enter into a guidelines stipulation that would include relevant conduct) where he would be allocating [*sic*] to a specific drug quantity which triggers the mandatory minimum sentence, there would be no opportunity (or need) for a *Fatico* hearing.

(*Id.* ¶ 4; *see id.* ¶ 6 ("I advised [Petitioner] that a necessary element of his plea allocation was the appropriate statutory weight applicable to the agreed upon plea" and that "a *Fatico* hearing would be unnecessary given the allocation, as well as the stipulated weights in any plea agreement.").  Mr. Celedonio's version of events is corroborated by the transcript of the plea proceeding, whereas Petitioner's is contradicted by it.[3]

---

[3] Petitioner alleged that on March 12, 2012, at approximately 3:40 p.m., while incarcerated at the Federal Correctional Facility at Fairton, New Jersey, he had a telephone conversation with Mr. Celedonio during which Mr. Celedonio confirmed that he told Petitioner ten months earlier that Petitioner "'can only request a Fatico hearing after sentencing and not before.'" (P's Br. 7-8.) Petitioner did not supply a recording of that conversation with the Petition. He later submitted what he characterized as a "letter motion ex parte," dated August 30, 2102, objecting to a Government request regarding an affidavit from Mr. Celedonio and again referring to the alleged March 12, 2012 conversation.  (Doc. 10.)  In the letter, Petitioner stated, among other things, that the recording would "refute counsel Celendonio's [*sic*] claims," (*id.*) – an odd assertion given that Mr. Celedonio had not yet supplied an affidavit or made any claims.  Petitioner further stated in the letter that the recording was in the possession of the Bureau of Prisons and would have to be obtained via subpoena.  The letter was stamped "received" by the Clerk of Court on September 7, 2012, a Friday.  Because it was designated "ex parte," it was docketed on the Court's Electronic Case Filing system on September 12, 2012, as "Court View Only."  On May 16, 2013, I directed the Government to obtain the recording if possible, and supply copies to the Court and Petitioner.  (Doc. 15.)  By letter dated May 21, 2013, (Doc. 16), the Government advised that an official at the Bureau of Prisons ("BOP") had confirmed that Petitioner had placed a call to a number that the Government had confirmed to be Mr. Celedonio's cell phone on March 12, 2012, at approximately 3:45 pm, but that pursuant to BOP policy, the recording of the call was erased after 180 days and could not be retrieved.  One-hundred-eighty days from March 12, 2012, is September 8, 2012, the day after Petitioner's letter was received by the Clerk of Court.  Even if I had seen the letter that day and immediately ordered that the recording be preserved, the recording would have been destroyed in the ordinary course before the BOP could have been informed of the order.  Because of the above-described events, the recording is not available to confirm or refute either side's version of events.

7

In short, the record is clear that Petitioner understood: 1) what he was doing when he admitted to conspiring to distribute at least 280 grams of crack; 2) that that admission would result in a sentence of at least 120 months (which is what he received); 3) that that admission was binding on him; and 4) that he would have no later opportunity to challenge drug weight. Petitioner cannot, in the face of the record, establish that Mr. Celedonio misled him into thinking otherwise.

### 2. Prejudice

Moreover, Petitioner has failed to establish that he was prejudiced by any alleged substandard advice. In the context of an ineffective assistance claim where the defendant has pleaded guilty, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001). Petitioner here does say he would not have pleaded guilty had he understood he could not later challenge drug weight. Indeed, even now he seems to be asking only for a hearing at which he can contest the drug quantity attributed to him. (*See* P's Br. 17 (requesting the Court to conduct *Fatico* hearing to determine probability of counsel's ineffectiveness; whether 280 gram weight was supported by the record; and whether Petitioner was denied favorable plea carrying only five-year mandatory minimum).) It is clear that even now Petitioner does not want to go to trial, but rather wants a plea to a charge carrying only a five-year mandatory minimum. But "a defendant has no right to be offered a plea, and there is no indication that the government would have offered, or even assented to, an alternative plea, including [the one Petitioner] now suggests." *Kovacs v. United States*, No. 12-CV-2260, 2013 WL 55823, at *3 (E.D.N.Y. Jan. 2, 2013) (citation omitted).

Indeed, the record is clear that no such offer would have been forthcoming. The Government represents (and the record of this case and the co-defendants' cases reveals no reason to doubt and every reason to believe) that: 1) the Government would not have offered a plea agreement that did not include Petitioner's stipulation that the offense involved at least 280 grams of crack, (Gov't Br. 17 n.4); 2) had Petitioner gone to trial, it would have sought to hold him responsible for even greater drug weights, (*id.* at 6 n.2); and 3) it had informed Mr. Celedonio that if Petitioner did not accept the plea offer, it would supersede the indictment to charge him with an additional count under 18 U.S.C. § 924(c) carrying a mandatory minimum consecutive term of five years' imprisonment, (*id.* at 9 n.3). Mr. Celedonio's affidavit confirms these representations. (*See id.* Ex. F ¶¶ 5, 8-9.) Thus, far from the record showing that had Mr. Celedonio challenged the 280 gram attribution, "there exist[s] a reasonable probability that the Hon. Judge Seibel, would have granted if not a full blown but at a minimum a limited fatico [*sic*] hearing so as to determine the validity of the 280 gram amount," (P's Br. 12), the record is plain that in the absence of Petitioner's admission to that amount, there would have been no plea agreement and he would have faced a superseding indictment.

Petititioner's argument seems to proceed from several misapprehensions. One is that he was entitled to plead guilty to the S3 indictment, filed February 8, 2011, (*see* No. 10-CR-392, Doc. 92), which charged that the conspiracy involved, among other things, 50 grams and more of crack. (*See* P's Br. 5-6, 10.)[4] While Petitioner technically could have entered a plea of guilty to

---

[4] The S3 indictment alleged that the conspiracy involved 50 grams and more of crack, 100 grams and more of heroin, 5 kilograms and more of cocaine, and marijuana. (*See* No. 10-CR-392, Doc. 92 ¶ 56.) Before the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2373, passed on August 3, 2010, the alleged crack and cocaine amounts would each have supported a ten-year mandatory minimum; following the FSA, only the cocaine amount would support such a minimum, and the crack amount necessary to support a ten-year

the charge in that indictment at any time, such a course would have been foolish in the extreme, because Petitioner would – in the absence of an agreement with the Government – have had no protection against a superseding indictment charging him with a quantity of crack supporting the ten-year mandatory minimum and with a violation of Section 924(c). Thus, Mr. Celedonio's alleged advice that Petitioner could not plead to the S3 indictment, (*see id.*), was accurate, in light of the expectation that the Government would supersede the S3 indictment if Petitioner did not accept a plea to a drug count carrying a ten-year mandatory minimum. While any defendant is always entitled to plead guilty at any time, he is not entitled "a plea of his choice." *Kovacs*, 2013 WL 55823, at *3.

   Petitioner also appears to be under the misapprehension that had he been allowed to plead guilty to the S3 indictment, he would have been held responsible only for drug amounts described in the overt acts (*see* P's Br. 3-4, 5-6, 10, 13-14), or that the record must contain independent "evidentiary support" to hold a defendant responsible for drug transactions not specified in the indictment, (*id.* at 9; *see id.* at 8-10, 12, 17). Indeed, Petitioner describes as "the crux of [his] claim" the argument that "there existed no evidentiary support on the record to attribute" to him a quantity of 280 grams or more of crack. (*Id.* at 9.) There are several

---

mandatory minimum became 280 grams or more. *See Dorsey v. United States*, 132 S. Ct. 2321, 2329 (2012). Following the enactment of the FSA, the Government took the position that defendants sentenced after August 3, 2010 for conduct preceding that date were not entitled to the benefit of the FSA, but on July 15, 2011, the Attorney General directed federal prosecutors to take the opposite position. *See United States v. McIntosh*, 704 F.3d 894, 908-09 (11th Cir. 2013); *United States v. Cox*, 458 F. App'x 79, 82 (2d Cir. 2012) (summary order). It is thus not surprising that on October 7, 2011 (after Petitioner had pleaded guilty), the Government superseded to charge, as to the remaining Defendants, that the drug conspiracy involved, among other things, 280 grams and more of crack. (*See* No. 10-CR-392, Doc. 290 ¶ 57.) The Government had advised the Court in April 2011 that it was continuing to investigate and might supersede. (*See* Transcript of Proceedings on April 12, 2011, No. 10-CR-392, Doc. 276, at 5-6.)

problems with these arguments.  First, defendants may be held responsible for drugs that are not specified in overt acts or elsewhere in the indictment.  *See, e.g., United States v. McLean*, 287 F.3d 127, 133 (2d Cir. 2002); *United States v. Thomas*, 274 F.3d 655, 664-65 (2d Cir. 2001) (*en banc*).  Indeed, an indictment charging narcotics conspiracy need not even contain overt acts.  *See United States v. Shabani*, 513 U.S. 10, 11 (1994).  Second, "evidentiary support" for a particular drug weight is not required where the defendant stipulates to that weight, *see United States v. Culbertson*, 670 F.3d 183, 189-90 (2d Cir. 2012) (factual basis for plea sufficient if allocution establishes drug type and quantity); *see also United States v. Robinson*, 14 F.3d 1200, 1206 (7th Cir. 1994) (where defendant sentenced based on stipulation in plea agreement, "no requirement that the district court spend time independently determining facts which will not affect the outcome of the case"); *cf. United States v. Benn*, 437 F. App'x 21, 22-23 (2d Cir. 2011) (summary order) (proper to sentence defendant to ten-year mandatory minimum where defendant did not explicitly admit required weight but plea agreement stated that weight and defendant understood his plea), as Petitioner did here.[5]  Third, where there is no admission by the defendant, the Government is not required to provide evidentiary support for drug weight until trial (at which the jury would determine what weight the Government had proven, from which the applicable mandatory minimum would be derived) or sentencing (at which the Court would

---

[5] Contrary to Petitioner's argument that the "lack of evidence [supporting a weight of 280 grams] includes . . . the actual plea agreement," (P's Br. 9), the plea agreement not only specifies that the charge to which Petitioner agreed to plead was a charge of conspiracy to distribute at least 280 grams of crack, (Gov't Br. Ex. B, at 1), but also contains Petitioner's stipulation that the offense "involved at least 280 grams but less than 840 grams of crack," (*id*. at 2).  Further, the record upon which the court accepted the plea and upon which Petitioner was sentenced also included his two verbal admissions at the plea proceeding that his offense involved at least 280 grams of crack.  (*Id*. Ex. C, at 17-19.)

11

determine what drug weight to attribute to the defendant for sentencing purposes).[6]  Thus, it is meaningless that at the time of the plea there were – apart from Petitioner's explicit admissions – no overt acts or "evidentiary support" proving that Petitioner was responsible for 280 grams of crack.  Like many defendants, Petitioner stipulated to 280 grams, relieving the Government of having to provide evidence of that amount, in exchange for other benefits.  In short, his admission – one that allowed him to, among other things, avoid a Section 924(c) charge and gain credit for acceptance of responsibility – supplied all the "evidentiary support" for the 280-gram attribution that was necessary.

Further, apart from the failure to allege that he would have gone to trial and apart from the misapprehensions underlying his legal arguments, Petitioner cannot establish prejudice because, viewed independently, the record "does not support a conclusion that had [Petitioner] known earlier that [he would not be able to challenge drug weight after sentencing], it is reasonably probable that he would have proceeded to trial rather than plead guilty." *Arteca*, 411 F.3d at 321.  That determination requires "inquir[y] into the record as a whole," and here, as in *Arteca*, "the record reflects many factors that indicate no such probability." *Id.*  Petitioner pleaded guilty knowing he would face at least a ten-year mandatory minimum and could be

---

[6]  Petitioner is correct that the applicable mandatory minimum derives from the drug weight alleged in the Indictment, such that, had the S3 indictment remained the operative indictment, and had crack been the only drug alleged, the mandatory minimum would have been five years.  But even with only a five-year mandatory minimum, the drug weight for which a defendant is responsible is calculated according to what was reasonably foreseeable to him as a participant in the conspiracy.  *See United States v. Thompson*, 528 F.3d 110, 119 (2d Cir. 2008).  Indeed, Petitioner concedes that Mr. Celedonio explained to him that a conspirator is accountable for drug distributed by co-conspirators.  (P's Br. 7.)  Thus, as Mr. Celedonio advised, even with a mandatory minimum below ten years, the Government would have sought to convince the Court that it should attribute a higher weight to Petitioner.  (*See* Gov't Br. Ex. F ¶ 5.)

sentenced to as much as life. *See id.* In doing so, he earned a three-level reduction for acceptance of responsibility that would have been unavailable if he had gone to trial. *See id.* His co-defendants have all either pleaded guilty or been convicted after trial, and Petitioner "has not provided any persuasive reason for doubting the strength of the [G]overnment's case against him." *Id.* Indeed, he does not even seem to dispute as a factual matter that he is responsible for at least 280 grams of crack under applicable legal principles; rather, he alleges only that the S3 indictment and the pre-plea record did not establish that fact. Finally, had he pleaded to the S3 indictment in the absence of a plea agreement, the Government would have been free to prosecute him on other counts, quite possibly resulting in a higher sentence. *See id.* at 321-22. Even where a petitioner has submitted an affidavit saying he would have gone to trial, such a "self-serving and conclusory statement" would not suffice, in the face of facts like those cited above, to show prejudice. *Id.* at 322. Here, where even the self-serving statement is absent, Petitioner cannot meet his burden on the second *Strickland* prong.

      B.      <u>Prior Felony Information</u>

Petitioner also claims that Mr. Celedonio told him that if he did not plead guilty, the Government would file a prior felony information ("PFI") under 21 U.S.C. § 851, which would double his mandatory minimum to 20 years, *see* 21 U.S.C. § 841(b)(1), and that he would not have pleaded guilty had he known that no prior felony information could in fact have been filed because he had not previously been convicted of a qualifying felony.[7] Again, the record refutes Petitioner's contentions.

---

[7] Under 21 U.S.C. § 841(b)(1), the otherwise applicable mandatory minimum is doubled if the defendant committed the offense "after a prior conviction for a felony drug offense has become final," and the Government files a PFI, *see* 21 U.S.C. § 851(a)(1). Both parties concur that Petitioner had no such qualifying felony drug conviction.

       1.       Substandard Performance

Mr. Celedonio's affidavit squarely contradicts Petitioner's rendition of these events. He states that he had no occasion to discuss a PFI with Petitioner because there was no conviction that could have triggered the filing of such a document. (*See* Gov't Br. Ex. F ¶¶ 7-8.) Were there no other evidence in the record on the subject, a hearing might be necessary, *see* Part III below, but as with Petitioner's first claim, the record supports Mr. Celedonio's version of events.

First, there is no mention in the plea agreement of the Government agreeing not to file a PFI, and there is no qualifying prior drug felony listed in Petitioner's criminal history in the plea agreement. (*See* Gov't Br. Ex. B, at 3.) Petitioner stated at the plea that he fully understood the plea agreement, that the written agreement contained the entire understanding between him and the Government, and that there were no agreements, promises or understandings between him and the Government apart from what was contained in the plea agreement. (*See id*. Ex. C, at 14-15.) These sworn representations are wholly contradicted by his newfound claim that he was under the impression that a promise not to file a PFI was part of his agreement with the Government. Indeed, if, as Petitioner claims now, the promise not to file a PFI was so important that he would not have pleaded guilty without it, it is hard to fathom how he could have failed to mention it when asked if there were any promises between him and the Government that were not documented in the written plea agreement. *See Seiller v. United States*, 544 F.2d 554, 568 (2d Cir. 1975) (claim that prosecutor had promised leniency properly rejected without hearing; it was squarely contradicted by defendant's statements at plea, and if there had been such a promise, it would have been called to judge's attention at sentencing).

Second, any discussion of a PFI between the Government and Mr. Celedonio, and between Mr. Celedonio and Petitioner, would have been nonsensical. There is no reason to

14

believe that both an Assistant United States Attorney ("AUSA") and Mr. Celedonio would discuss a plainly inapplicable document, let alone make it a centerpiece of a plea deal (but not include it in the written agreement). The Court is not prepared to conclude, based only on Petitioner's after-the-fact say-so, *see Arteca*, 411 F.3d at 322, that both an AUSA and Mr. Celedonio had what in the context of this case would have been a preposterous discussion, which Mr. Celedonio then recounted to Petitioner.[8] To do so in these circumstances would violate my obligation to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.[9]

      2.     Prejudice

A defendant's bald post-conviction claim that he would have done the opposite of what he did, had he been properly advised, is properly viewed with skepticism. *See Panuccio v. Kelly*, 927 F.2d 106, 109 (2d Cir. 1991) (prejudice prong of ineffective assistance inquiry, requiring petitioner to show he would have gone to trial if properly advised, not satisfied merely by petitioner's testimony to that effect, because a defendant's after-the-fact testimony "suffers from obvious credibility problems") (internal quotation marks omitted); *Torres-Cuesta v. United States*, No. 09-CV-91, 2010 WL 3928588, at *4 (E.D.N.Y. Sept. 30, 2010) ("Because a convicted defendant will always have a strong incentive to make a prejudice claim after

---

[8] What would make sense, however, is that Mr. Celedonio conveyed to Petitioner the Government's stated intention to file a Section 924(c) charge (not a PFI) if no disposition to a ten-year mandatory minimum was reached. (*See* Gov't Br. 9 n.3; *id.* Ex. F ¶¶ 8-9.)

[9] Although it is not necessary to my decision, I note that Mr. Celedonio is an experienced and respected advocate, as evidenced by his appointment to the Capital Panel of this court's Criminal Justice Act ("CJA") panel of attorneys and by his service as both a mentor and writing instructor in this court's CJA Mentoring Program.

conviction, courts are skeptical of self-serving, post-conviction testimony that but for the counsel's bad advice, the defendant would have pled guilty or gone to trial.") (internal quotation marks omitted); *cf. Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) ("[t]o be sufficiently credible to justify a full hearing, [petitioner's statement that he would have accepted plea if properly advised] must be accompanied by some [supporting] objective evidence . . . .") (internal quotation marks omitted).  Petitioner now states that he would not have pleaded guilty had he not thought that doing so would enable him avoid the additional mandatory time that a PFI would have required, but most of the same factors discussed earlier, (*see* pages 12-13 above), suggest otherwise.  Petitioner knew he faced at least ten years and as much as life if he accepted the Government's offer; by accepting it, he gained acceptance-of-responsibility credit; he does not claim innocence or provide reason to doubt the Government's case against him; and by accepting the offer, he avoided the additional mandatory consecutive time that would have come from conviction on a Section 924(c) count.  There thus were significant benefits to Petitioner from the plea apart from the alleged belief – never articulated at the plea, in a motion to withdraw it, or at sentencing – that his plea enabled him to avoid a PFI.  Petitioner has thus not only failed to establish that he believed a PFI was on the table, but he has failed to establish that he would have insisted on a trial had he understood that a PFI was not at issue.  *See Scott v. Superintendent, Mid-Orange Corr. Facility*, No. 03-CV-6383, 2006 WL 3095760, at *9 (E.D.N.Y. Oct. 31, 2006) ("[C]onclusory allegations that a defendant would have insisted on proceeding to trial are generally insufficient to establish actual prejudice under *Strickland*."); *see also Herrera v. Hynes*, No. 08-CV-1651, 2008 WL 5068608, at *3 (E.D.N.Y. Nov. 21, 2008) (in the absence of "evidence showing why [petitioner] would have risked a trial when the likely outcome was both exposure to deportation and a substantial, preceding custody term . . . .

[petitioner] cannot raise a claim of prejudice under the second prong of *Strickland*"); *Zhang v. United States*, 543 F. Supp. 2d, 175, 185 (E.D.N.Y. 2008) ("Even if Zhang had been informed that a conviction for an aggravated felony would result in mandatory deportation, there is no evidence that he would have chosen to proceed to trial.")

III.   Hearing

To obtain a hearing on an ineffective assistance of counsel claim, a defendant "need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted).

> Nevertheless, the Circuit has also recognized that "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (internal quotation and citation omitted). Although the Circuit's "precedent disapproves of summary dismissal of petitions where factual issues exist [ ] . . . it permits a 'middle road' of deciding disputed facts on the basis of written submissions." *Id*. (internal quotations and citations omitted). Indeed, in *Raysor*, where the Court reversed the district court for failing to hold a hearing, the Circuit nevertheless re-affirmed the Circuit's earlier holding in *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001), where the Court had concluded that "[i]t was . . . within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, [and] the burden on trial counsel and the government" and that the district court "reasonably decided that [live] testimony of [the defendant] and his trial counsel would add little or nothing to the written submissions" (quoted approving[ly] in *Raysor*, 647 F.3d at 494).

*Williams v. United States*, No. 07-CV-1804, 2012 WL 1116403, at *5 (E.D.N.Y. Mar. 30, 2012) (alterations in original); *see Crisci v. United States*, 108 F. App'x 25, 27 (2d Cir. 2004) (summary order) (within court's discretion to decide petitioner's ineffective assistance claim based on affidavits of petitioner and counsel).

Having observed both Mr. Celedonio and Petitioner at the time of the plea and the sentencing, I conclude that live testimony from them would add little or nothing to the written submissions.  As in *Chang*, "the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances," and "with that submission the record was sufficient to support dismissal of the petition."  250 F.3d at 85.  Also as in *Chang*, Petitioner's claim is based "solely on his own highly self-serving and improbable assertions," in contrast to Mr. Celedonio's "eminently credible" version of events, and thus, especially because I am "intimately familiar with the . . . [relevant] events and circumstances," it is "within [my] discretion to determine that more [is] not needed."  *Id.* at 86; *see, e.g., Padin v. United States*, No. 11-4812, 2013 WL 1665465, at *2 (2d Cir. Apr. 18, 2013) (summary order) (evidentiary record sufficient, without live hearing, where court reviewed affidavits and transcripts and had observed petitioner and counsel); *Wang v. United States*, 458 F. App'x 44, 46 (2d Cir. 2012) (summary order) (reasonable for court to decide petition on written record where petitioner's allegations were "incredible in and of themselves" and were contradicted by other affidavits and transcript of plea colloquy); *Puglisi*, 586 F.3d at 214 (for purpose of determining whether live hearing necessary, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding").

## Conclusion

In light of the foregoing, the motion under Section 2255 is denied and the Petition is dismissed.  The Clerk of Court is respectfully directed to: 1) terminate the unnumbered motion docketed on April 29, 2012 in 10-CR-392; 2) close case 12-CV-3344; and 3) provide a copy of this Order to Petitioner by mail at the following address: Damon Sinclair, #64682-054, Fairton

FCI, P.O. Box 420, Fairton, NJ 0832.  As the Petition makes no substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253; *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).

SO ORDERED.

Dated: July 16, 2013
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.